IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEFAN GOIA,

                Plaintiff,

v.                                                   1:10-cv-2405-WSD

CITIFINANCIAL AUTO,

                Defendant.

**OPINION AND ORDER**

This matter is before the Court on Stefan Goia's ("Plaintiff") *pro se* Motion to Recuse Judge William S. Duffey ("Motion to Recuse") [71] and Affidavit of Bias and Prejudice [71.1], which the Court construes as a new Motion to Recuse following the Court's denial of Plaintiff's oral motion to recuse made at the pretrial conference conducted on March 16, 2012.

**I.     BACKGROUND**[1]

On May 25, 2007, Plaintiff and his wife bought a 2007 Suzuki Aerio (the "Vehicle") from Star Suzuki Mall of Georgia ("Star Suzuki"). They purchased the car by executing a Retail Installment Sales Contract Single Finance Charge

---

[1] The factual background and procedural history of this case is laid out in detail in the Court's Order of January 13, 2012.

agreement (the "Contract") with Star Suzuki which, besides being a contract for sale of the Vehicle, also provided terms by which Plaintiff and his wife financed the purchase. (Def.'s Statement of Undisputed Material Facts ("DSUMF") ¶ 1; Ex. B to Aff. of Stefan Goia). Plaintiff and his wife agreed "to pay the Creditor - Seller . . . the Amount Financed and Finance Charge" according to the terms set forth in the Contract. (Ex. B to Aff. of Stefan Goia).

In the Contract, Plaintiff and his wife granted to Star Suzuki a security interest in the Vehicle. (Id.). To protect the security interest, Plaintiff and his wife were required, and agreed, to obtain insurance on the Vehicle.[2] (Id.). They specifically agreed "to have physical damage insurance covering the loss of or damage to the vehicle for the term of [the] contract." (Id.). The Contract stated further:

> The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge

---

[2] The Court notes that Plaintiff's wife, Florica Goia, signed a "Confirmation of Accidental Physical Damage Insurance" that required her to take certain actions regarding the insurance on the Vehicle. (Ex. 11 to Pl.'s Dep.). There is no similar form in the record that was signed by Plaintiff.

>you must pay.  The charge will be the premium of the insurance and a finance charge at the highest rate the law permits.

(Id.).

Plaintiff would be considered in default if he violated any term in the Contract.  (Id.).  In the event of default, CitiFinancial Auto ("Defendant" or "CitiFinancial") could demand that Plaintiff pay the total amount of indebtedness due under the Contract and could peacefully repossess the Vehicle as the law allows.  (Id.).  If the Vehicle was damaged, destroyed, or missing, Plaintiff agreed to pay Defendant the total amount of indebtedness owed under the Contract.  (Id.).

The Contract constituted "the entire agreement between [Plaintiff] and [Defendant] . . . ."  (Id.).  All changes to the Contract were required to be in writing; and oral changes were not binding.  (Id.).

By executing a block at the bottom of the Contract, Star Suzuki assigned "its interest in [the] contract" to CitiFinancial pursuant to "the terms of [Star Suzuki's] agreement(s) with [CitiFinancial]."  (Id.).

Plaintiff admits that he signed the Contract and understood and agreed to its terms.  (DSUMF ¶ 10).  Plaintiff specifically understood that he was required to maintain adequate physical damage insurance on the Vehicle pursuant to the

Contract.  (Id. ¶ 11).  The parties do not dispute that the Contract was assigned to CitiFinancial and that CitiFinancial is authorized to enforce its terms.[3]

In April 2010, Defendant, based on an alleged default under the terms of the Contract, filed a replevin action in the State Court of Gwinnett County, Georgia, (the "Replevin Action") to obtain a writ of possession for the Vehicle.  (Id. ¶ 29). On September 1, 2010, following a bench trial, a writ of possession was issued requiring Plaintiff to turn the Vehicle over to Defendant.  (Id. ¶ 30).  When Defendant learned that Plaintiff could not comply with the writ of possession because the Vehicle had been abandoned in Ohio following an accident, Defendant dismissed the Replevin Action without prejudice.  (Id. ¶ 34).

On June 9, 2010, while the Replevin Action was pending, Plaintiff filed this action against Defendant in the State Court of Fulton County.  Plaintiff's *pro se*, two-page, single-spaced Complaint states that he is suing Defendant for "discrimination, breach of contract, theft, continuous harassment for over 27 months, defamation and trespassing."  (Compl. at 1).

Plaintiff claims that Defendant's addition of a collateral protection insurance policy (the "CPI Policy") to the loan constitutes a breach of contract because the

---

[3] The assignment to CitiFinancial is part of the Contract and the copy of the Contract filed by Plaintiff and referred to in his affidavit discloses the assignment to CitiFinancial.

4

Contract only allowed Defendant to purchase additional insurance on his behalf if he did not have insurance sufficient to cover Defendant's interest. (Compl. at 1; Ex. B to Aff. of Stefan Goia). Plaintiff specifically asserts that he had two valid insurance policies — one from Nationwide Insurance Company ("Nationwide") and a GAP policy purchased from the dealer — that complied with the Contract, that neither had lapsed, and that he informed Defendant of the existence of these policies in response to an insurance request by Defendant. (Compl. at 1; Aff. of Stefan Goia at 7-8).

Plaintiff also claims that he asked Defendant to cease its contacts to collect amounts that Plaintiff told Defendant he did not owe. Plaintiff alleges that Defendant continued to make collection calls, and that they were made several times a day, including after 9:00 p.m. in the evening, to his wife's workplace, and to his credit references. (Compl. at 2).

On July 30, 2010, Defendant removed the action to this Court and filed its Answer and Counterclaims. In its Counterclaims, Defendant alleges a breach by Plaintiff of his obligation to pay amounts due under the Contract and default on the loan. (Def.'s Answer and Countercls. at 10-13). Defendant seeks recovery of attorney's fees pursuant to O.C.G.A. § 13-6-11. (<u>Id.</u> at 13). Defendant claims that Plaintiff's refusal to pay amounts due under the loan constitutes a default and

breach of the loan and Contract. (DSUMF ¶¶ 22-23; Def.'s Answer and Countercls. at 11-12).

On April 8, and April 29, 2011, Defendant and Plaintiff moved and cross-moved, respectively, for summary judgment on Plaintiff's claims and Defendant's Counterclaims. Liberally construing his entire Complaint, the Court found that Plaintiff asserted claims for discrimination, breach of contract, theft, harassment, defamation, trespassing, and a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").[4] Plaintiff seeks damages in the amount of $6 million.[5] (Compl. at 2).

On January 13, 2012, the Court granted summary judgment on Plaintiff's claims of discrimination, theft, harassment, trespass, defamation, and violation of

---

[4] This construction of his Complaint as including a claim under the Fair Debt Collection Practices Act was reinforced by the language in the Complaint that clearly pointed to asserted violations of the FDCPA. See 15 U.S.C. § 1692c(a)(1) (prohibiting phone calls after 9:00 p.m.). Additionally, in Plaintiff's deposition, he claimed that in response to the phone calls "[e]ven one time I reminded them that there was a thousand dollar charge per call . . . ." See id. § 1692k(a)(2) (allowing for statutory damages of $1,000 per violation); (Dep. of Pl. 83:21-24). The Court found these allegations put Defendant on notice of a FDCPA claim and satisfied the liberal pleading standards under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a); Sams v. United Food & Commercial Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989) ("A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.").

[5] Plaintiff bases his asserted damages on what he has seen "on mass media, like newspapers." (DSUMF ¶ 32).

the FDCPA and denied summary judgment on Plaintiff's claim and Defendant's counterclaim for breach of contract, and Defendant's claim for attorney's fees. The Court denied Plaintiff's Motion for Summary Judgment.

On February 3, 2012, Plaintiff filed a forty-nine page pleading entitled "Contest to the 'Opinion and Order' and Motion to Reconsider 'Plaintiff's Motion for Summary Judgment,'" which the Court liberally construed as a Motion for Reconsideration of the Court's January 13, 2012, Order pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) [51]. On February 17, 2012, Defendant filed its response and Plaintiff replied on February 29, 2012 [53, 54].

On February 29, 2012, after Plaintiff replied, the Court denied Plaintiff's Motion for Reconsideration of its ruling on Plaintiff's Motion for Summary Judgment [56].

On March 16, 2012, a pretrial conference hearing was held by the Court [64]. At the hearing, Plaintiff disagreed with the Court's instruction that he would be limited to the presentation of evidence regarding his sole remaining breach of contract claim. (Tr. of Pretrial Conference Hr'g at 17:24-18:3). The Court explained to Plaintiff that: "You may present evidence only on the claim of breach of contract. I have already ruled that your claims for discrimination, your claims for defamation, your claims for trespass are not any longer in the case, and I have

7

dismissed them." (Id. at 18:6-11). Plaintiff then stated he was "forced to ask for recusal, because there are clear proofs that you are being partial with the defendant." (Id. at 18:13-15). Plaintiff further claimed that he sought recusal "because the summary judgment, it was not impartial and not fair." (Id. at 18:21-22).

The Court denied the request for recusal because the request was "based upon my legal rulings on claims in the case," and went on to state "[t]hat is not a proper [basis] for recusal, and I'm denying it." (Id. at 18:18-19). Plaintiff thereafter sought to "reserve my right to ask for recusal." (Id. at 19:25-20:1). The Court instructed Plaintiff that he could "appeal my decision not to recuse with the Eleventh Circuit and they will review my decision, and you may do that when the case is over." (Id. at 20:3-5).

On March 29, 2012, Plaintiff filed his Motion to Recuse Judge William S. Duffey [71] and Affidavit of Bias and Prejudice [71.1]. In seeking recusal again, Plaintiff reiterates the same arguments he made during the pretrial conference hearing regarding his disagreement with the Court's ruling on his Motion for

Summary Judgment and denial of his Motion for Reconsideration regarding that ruling.[6]

A bench trial is scheduled to begin at 10:00 a.m. on April 2, 2012.

## II. DISCUSSION

28 U.S.C § 455(a) provides that any district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The test under Section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts on which recusal was sought would entertain a significant doubt about the judge's impartiality." United States v. Chandler, 996 F.2d 1073, 1104 (11th Cir. 1993). To warrant recusal or disqualification, any bias "must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case." McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir. 1990). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of *prior* proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment

---

[6] The Court construes Plaintiff's latest filing as a new Motion to Recuse following the Court's denial of his oral motion for recusal at the pretrial conference hearing on March 16, 2012. The Court further notes that the entirety of Plaintiff's Affidavit of Bias and Prejudice is dedicated to revisiting issues that have already been ruled on and present no reasons, besides his disagreement with the legal rulings in this action, for recusal or disqualification.

impossible." Liteky v. United States, 510 U.S. 540, 555 (1994) (emphasis added). Disagreement with "judicial rulings, routine trial administration efforts, and ordinary admonishments" are insufficient to require a judge's recusal. Id. at 556.

To satisfy the requirements of Section 455(a), Plaintiff must offer facts, and not merely allegations, that evidence partiality. United States v. Cerceda, 188 F.3d 1291, 1292 (11th Cir. 1999) (a charge of partiality must be supported by some factual basis. . . . Recusal cannot be based on 'unsupported irrational or highly tenuous speculation.'" (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981)); Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987) ("Allegations under [§ 455] need not be taken as true.")

Plaintiff's only ground at the hearing and in his now written Motion to Recuse is that the Court is impartial based on its adverse ruling on Plaintiff's Motion for Summary Judgment. Plaintiff offers no evidence of, and makes no allegations regarding, any personal or extrajudicial bias or impartiality on the part of this Court that would make a fair judgment impossible. Plaintiff's dissatisfaction with the ruling on his Motion for Summary Judgment is insufficient and an improper ground upon which to seek recusal and require disqualification. See Byrne v. Nezhat, 261 F.3d 1075, 1102-03 (11th Cir. 2001), abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146 (11th Cir. 2011)

("[A]dverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").[7] It was for these reasons his oral motion to recuse was denied at the pretrial conference hearing. In his new, written Motion to Recuse, Plaintiff has presented nothing to warrant reconsideration of that decision and fails to convince the Court that recusal or disqualification is necessary or appropriate.[8]

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Recuse [71] is **DENIED**.

**SO ORDERED** this 30th day of March, 2012.

                                    */s/ William S. Duffey*
                                  WILLIAM S. DUFFEY, JR.
                                  UNITED STATES DISTRICT JUDGE

---

[7] The Court further finds that Plaintiff has not met the procedural or substantive requirements for recusal pursuant to 28 U.S.C. § 144.

[8] The Court notes that the case cited by Plaintiff in his Motion to Recuse, Johnson v. Dist. Court In and For Jefferson Cnty., 674 P.2d 952 (Colo. 1984), which applied Colorado law, has no application to this action.